THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TRESALYN BUTLER-SHARP**<br>106 N High St. #807<br>Columbus, OH 43215<br><br>   Plaintiff,<br><br> v.<br><br><br><br>**FRANKLIN COUNTY SHERIFF'S OFFICE**<br>373 South High Street<br>Columbus, OH 43215<br><br>   Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO. 2:23-cv-3989<br><br>JUDGE<br><br>MAGISTRATE JUDGE<br><br><br>**Jury Demand Endorsed Herein** |

## COMPLAINT

NOW COMES Plaintiff Tresalyn Butler-Sharp ("Plaintiff") and proffers this Complaint for damages against Defendant Franklin County Sheriff's Office ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Franklin County, OH.

2. Defendant Franklin County Sheriff's Office is a local government agency conducting significant business in the Southern District of Ohio.

3. Plaintiff is an employee of Defendant as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq* and the Ohio Civil Rights Act, R.C. § 4112 at all relevant times herein.

4. Defendant is an "employer" as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq*. and the Ohio Civil Rights Act, R.C. § 4112.

## JURISDICTION AND VENUE

5. All counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. §1331.

6. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq*, the Ohio Laws of Discrimination, R.C. Chapter 4112 ("Chapter 4112"), and 28 U.S.C. §1331. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

7. Venue is proper pursuant to 28 U.S.C. §1391 because Defendant has multiple government facilities in or around Columbus, Ohio, at which the events in question took place.

8. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of her Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as "Exhibit A".

## FACTUAL BACKGROUND

9. Plaintiff has been employed by the Franklin County Sheriff's Office since February 28, 2005.

10. Plaintiff is an African American female and a member of the LGBTQ+ community, who identifies as lesbian.

11. Plaintiff was hired as a Deputy Sheriff in 2005 and transitioned to the Director of Social Services on August 31, 2020, and has received exemplary performance reviews throughout her career with the Sheriff's Office.

12. In or around July of 2022, Plaintiff applied for a promotion within the Franklin County Sheriff's Office.

13. Specifically, Plaintiff applied for the Chief or Chief Executive Officer of Recruitment and Professional Development position, that was open at the Sheriff's Office at the time.

14. Plaintiff was uniquely qualified for the position because of her training and experience, and she was confident she would be promoted.

15. By way of background, Defendant created the Chief or Chief Executive Officer for Recruitment and Professional Development position in Spring 2022 as part of an agencywide effort to modernize recruitment, hiring, and professional development for current and future Defendant personnel.

16. Defendant hired an outside company, The Cardinal Group II, to assist with evaluating the candidates and selecting the ideal and recommended candidate for the position.

17. On September 26, 2022, The Cardinal Group provided Defendant with an Executive Summary of the selection process, attached hereto as Exhibit B.

18. The job posting for the Chief or Chief Executive Officer for Recruitment and Professional Development was open during the month of July 2022, on a variety of targeted posting sites and social media.  (Exhibit B, page 2).

19.     Of the 59 applications received by Defendant, 11 were current or retired Defendant personnel.  (*Id*.).

20.     The Cardinal Group II ("TCG2") reviewed the applications using two primary criteria required by the job posting – Public Safety Administrative Experience and HR/Recruitment Leadership Experience.  (*Id*. p. 2).

21.     Following the preliminary review, 27 candidates remained.  Plaintiff was one of those candidates.  13 candidates were moved forward to interview; the 14 candidates not disqualified but categorized as "Low Priority" were provided the opportunity to complete the written assignment.

22.     From this group of 14, three (3) candidates were moved forward to interview based on their scores in the written assignment.

23.     The competency-based interviews were conducted by Defendant's executive leadership and proctored by TCG2 staff.

24.     Defendant's Interview panelists were: Chief Interviewer Sherry Woods, Chief Michael Flynn, Chief James Gilbert, Director David Masterson, Chief Geoffrey Stobart, and Chief David Conley (Alternate).

25.     Panelists asked questions for each of the six competencies for the position.  Results showed five candidates' scores set them apart, one of which was Plaintiff.  (*Id*. p. 3).

26.     The written assignment was scored according to three competencies (Strategic Thinking, Impact & Influence, and Commitment to FCSO Organizational Culture), including questions about candidates' strategic vision for recruitment that incorporates SIM.

27. The pre-Assessment Center score was calculated as the sum of the written assignment score weighted at 25%, and the interview score weighted at 75%.

28. One candidate failed to complete the written assignment prior to the deadline.

29. The Assessment Center was conducted on Wednesday, September 14, 2022. Three candidates completed three activities and were assessed by a four-person assessor team according to the competency-based assessment model.

30. Plaintiff first gave a presentation on "Strategic Vision for FCSO Recruitment," assessed by Sherry Woods and Felicia Rutledge.

31. Plaintiff then completed her "In-Basket" Assessment and was assessed by Jerry Clayton and Emily Arents.

32. Candidates were assessed based on their responses to 20 different tasks in the form of emails, voicemails, memos, phone calls, and other communications relating to issues typical for the Chief of Recruitment and Professional Development.

33. Candidates had 90 minutes to complete the tasks, then responded to assessor panelists' questioning about their prioritization and response decision-making.

34. Plaintiff's third and final portion of the Assessment Center consisted of "Role Plays," and was evaluated by Sherry Woods, Emily Arents, Felicia Rutledge, and Proctor Eric Waddell.

35. This was to test the candidates' "Commitment to FCSO Organizational Culture." Team Leadership Candidates participated in two separate role play scenarios, acting in the role of the Chief of RPD position.

36. The first scenario was a meeting with the Chief of Corrections about managing agency resources to address staffing issues. The second was a meeting with a reporter from local media.

37. The final Assessment Center score was calculated as follows:

- 10% Presentation
- 40% In-Basket Exercise
- 50% Role Plays

The top performer in each of the activities was the overall top candidate for the selection process.

38. Out of the three candidates, **Plaintiff received the highest overall score of 92.67**, compared to Marvin Hill's and William Caskey's scores of 72.92 and 57.17, respectively. (Exhibit B, p. 4).

39. Based on the recommendation from The Cardinal Group II, Plaintiff was the Highly Recommended candidate for this position. (*Id*.).

40. In fact, Plaintiff was the only candidate that was "Highly Recommended." The other two candidates were "Not Recommended." (*Id*.).

41. Nonetheless, Sherriff Dallas Baldwin chose another candidate, who upon information and belief, is a straight male, with no legitimate reason for doing so.

42. The person chosen for the position was clearly less qualified than Plaintiff based on the independent analysis performed by The Cardinal Group II.

43. Why Sheriff Baldwin hired a company to assist with this process if he did not intend to follow the recommendation it provided is a mystery.

44. Upon information and belief, Plaintiff was not chosen for this position is because of her gender and sexual orientation.

45. The final report provided by The Cardinal Group II was also provided to Plaintiff. It is a longer, more detailed analysis of the interview and selection process, with the names of the candidates removed. It is attached hereto as Exhibit C.

46. Candidate B, (aka Plaintiff), is again listed as the ideal candidate. (Exhibit C, p. 2).

47. Plaintiff' score is 20% higher than the next most qualified candidate. Again, she was not chosen for the position. (*Id*. p. 8).

48. Sheriff Dallas Baldwin attempted to hide the scores and recommendation portion of the final report that The Cardinal Group II provided, presumably because he did not want Defendant to discover that Plaintiff was the recommended candidate by 20% and he did not choose her for the position.

49. In an email from Sheriff Baldwin on October 13, 2022, obtained by a FOIA request, he specifically asks Emily Arents from The Cardinal Group II to "state final report and omit scores and recommendations" from the report because he was "thinking of public records requests." That email is attached hereto as Exhibit D.

50. Plaintiff has no doubt that Sheriff Baldwin's actions were unlawful. Defendant violated the law with regard to the failure to promote Plaintiff into a position that she was quite obviously the most qualified candidate for, based on an evaluation done by a third-party entity with no interest in the outcome.

51. Despite that recommendation, Sheriff Baldwin chose the person that he wanted for the position – Marvin Hill, who was listed as "Not Recommended" by The Cardinal Group. (Exhibit B, p. 4).

52. Not only did Sheriff Baldwin violate the law by failing to choose Plaintiff for the position as the most qualified candidate, he and his assistant Lonessa A. Mills, upon information and belief, blatantly lied to Plaintiff about the selection criteria.

53. On or about October 27, 2022, Plaintiff was informed of the decision regarding who was to be hired into the Chief/Chief Executive Position, via email. That email is attached hereto as Exhibit E.

54. Plaintiff responded and asked Ms. Mills, "Am I able to access my scoring and where I ranked?"

55. Ms. Mills responded and said, "You're welcome. There was not an overall ranking or scoring. The Sheriff considered the top 3 candidates and made a decision." (See Exhibit E).

56. Plaintiff contends that is a blatant lie, as the scoring rubrics reflect that a scoring process and overall ranking were indeed used to recommend the most qualified candidate – Plaintiff.

57. Ms. Mills also stated that The Cardinal Group II was "tasked with providing the Sheriff with the final three candidates." This is not true. The Cardinal Group surely provided three candidates and two of those candidates were very clearly "Not Recommended."

8

58. The Cardinal Group provided Sheriff Baldwin with three candidates – one was recommended for the position and two were not, leaving no ambiguity about which candidate was the most qualified.

59. Plaintiff was the most qualified and the recommended candidate and Sheriff Baldwin deliberately did not promote her into this position, instead choosing Marvin Hill, "Not Recommended" by the Cardinal Group II.

60. Upon information and belief, the only difference between Mr. Hill and Plaintiff is that Mr. Hill is a straight male. He is clearly not more qualified for the position than Plaintiff.

61. Defendant discriminated against Plaintiff based on her gender and sexual orientation and attempted to lie about it to cover it up.

62. Defendant clearly has hostile views regarding Plaintiff's gender and sexual orientation. Defendant then committed an adverse employment action against Plaintiff when it deliberately failed to promote her into a position for which she was highly qualified.

63. Plaintiff is currently employed by Defendant.

## COUNT I
### Gender/Sexual Orientation Discrimination – Title VII – Failure to Promote

64. Plaintiff reasserts and reincorporates each and every allegation in the preceding paragraphs as if fully rewritten herein.

65. Defendant engaged in conduct that violates Title VII prohibiting sex discrimination by discriminating against Plaintiff and failing to promote her because of her gender and/or her sexual orientation.

66. Plaintiff is female and is therefore a member of a protected class. Plaintiff is a member of the LGBTQ community, also a protected class.

67. Plaintiff was subjected to an adverse employment action as Defendant failed to promote her to a position for which she was highly qualified.

68. Plaintiff was qualified for the position and "highly recommended" by an independent company. She was the most qualified candidate by 20 percentage points after an independent analysis.

69. Defendant chose to hire The Cardinal Group to conduct an independent analysis to avoid the appearance of bias in its hiring decision. Yet, when Sheriff Baldwin was dissatisfied the recommendation of the most qualified candidate, he refused to follow the thoroughly analyzed recommendation and chose a male candidate instead.

70. Defendant lied to Plaintiff about The Cardinal Group's recommendation while trying to hide the results of the analysis from public view.

71. Plaintiff was the most qualified and ***only*** recommended candidate for the position, but instead, Sheriff Baldwin chose a less qualified male candidate for the position.

72. Plaintiff was treated differently from a similarly situated male candidate, Mr. Hill, who was granted the position despite being significantly less qualified for the position according to the independent analysis.

73. Defendant failed to promote Plaintiff, the most qualified and recommended candidate, because of her gender and/or sexual orientation.

74. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but

not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

75. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT II
### Gender/Sexual Orientation Discrimination – Ohio Civil Rights Act – Failure to Promote

76. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

77. Defendant engaged in conduct that violates R.C. § 4112 prohibiting sex discrimination by discriminating against Plaintiff and failing to promote her because of her gender and/or sexual orientation.

78. Plaintiff is female and is therefore a member of a protected class.

79. Plaintiff was subjected to an adverse employment action as Defendant failed to promote her to a position for which she was highly qualified.

80. Plaintiff was qualified for the position and "highly recommended" by an independent company. She was the most qualified candidate by 20 percentage points after an independent analysis.

81. Defendant chose to hire The Cardinal Group to conduct an independent analysis to avoid the appearance of bias in its hiring decision. Yet, when Sheriff Baldwin was dissatisfied the recommendation of the most qualified candidate, he refused to follow the thoroughly analyzed recommendation and chose a male candidate instead.

Case: 2:23-cv-03989-MHW-EPD Doc #: 1 Filed: 12/01/23 Page: 12 of 13  PAGEID #: 12

82. Defendant lied to Plaintiff about The Cardinal Group's recommendation while trying to hide the results of the analysis from public view.

83. Plaintiff was the most qualified and ***only*** recommended candidate for the position, but instead, Sheriff Baldwin followed his own bias and chose a less qualified male candidate for the position.

84. Plaintiff was treated differently from a similarly situated male candidate, Mr. Hill, who was granted the position despite being significantly less qualified for the position according to the independent analysis.

85. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

86. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Rachel Sabo Friedmann*

        Rachel Sabo Friedmann (0089226)
*Rachel@TFFLegal.com*
Casey D. Mayell (0102178)
*Casey@TFFLegal.com*
**The Friedmann Firm LLC**
3740 Ridge Mill Dr.
Hilliard, OH 43026
614-610-9757 (Phone)
614-737-9812 (Fax)

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Rachel Sabo Friedmann*
Rachel Sabo Friedmann (0089226)

13